ORIGINAL

LODGED
AUG 25 2003
CLERK, U.S. DISTRICT COURT
DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
AUG 27 2003
at 9 o'clock and ___ min. ___ M
WALTER A.Y.H. CHINN, CLERK

PETER C. WOLFF, JR. #2332
Federal Public Defender
District of Hawaii

DONNA M. GRAY    # 4519
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii   96850-5269

Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:     fpdhi@hotmail.com

Attorney for Defendant
JOHN GILBREATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN GILBREATH,<br><br>Defendant. | ) Cr. No. 03-00106 DAE<br>)<br>) NOTICE OF MOTION; MOTION<br>) TO SUPPRESS EVIDENCE AND<br>) STATEMENTS; MEMORANDUM<br>) OF LAW; DECLARATION OF<br>) COUNSEL; CERTIFICATE OF<br>) SERVICE<br>)<br>) DATE: SEP 1 8 2003<br>) TIME: 9:00 am<br>) JUDGE: David A. Ezra |

## NOTICE OF MOTION

TO:  THOMAS C. MUEHLECK
     Assistant United States Attorney
     PJKK Federal Building
     300 Ala Moana Boulevard, Room 6100
     Honolulu, Hawaii  96813

PLEASE TAKE NOTICE that the following motion will be heard before the Honorable David A. Ezra, in his courtroom in the United States Courthouse, 300 Ala Moana Boulevard, Honolulu, Hawaii, on __SEP 1 8 2003__ __9:00 am__, or as soon as counsel may be heard.

PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii

DONNA M. GRAY     # 4519
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii   96850-5269

Telephone:  (808) 541-2521
Facsimile:   (808) 541-3545
E-Mail:      fpdhi@hotmail.com

Attorney for Defendant
JOHN GILBREATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) Cr. No. 03-00106 DAE |
|---|---|
| Plaintiff, | ) MOTION TO SUPPRESS ) EVIDENCE AND STATEMENTS |
| vs. | ) |
| JOHN GILBREATH, | ) |
| Defendant. | ) |

## MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

COMES NOW the defendant, John Gilbreath, through counsel, Donna M. Gray, Assistant Federal Defender, and moves this Honorable Court to suppress all evidence obtained in the warrantless search of John Gilbreath's

residence by law enforcement officers, as well as all statements made by Mr. Gilbreath to law enforcement officers subsequent to the search.

This motion is based upon the Fourth, Fifth and Sixth Amendments to the United States Constitution, the attached Memorandum of Law and Declaration of Counsel, and any evidence that may be adduced at a hearing on this motion.

DATED:   Honolulu, Hawaii, August 25, 2003.

_____
DONNA M. GRAY
Attorney for Defendant
JOHN GILBREATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Cr. No. 03-00106 DAE |
| | ) |
| Plaintiff, | ) MEMORANDUM OF LAW |
| | ) |
| vs. | ) |
| | ) |
| JOHN GILBREATH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW

### I. Background

In the early morning of December 19, 2002, at about 6:00 a.m., ten or more armed agents of the Bureau of Alcohol, Tobacco and Firearms (ATF), arrived at John Gilbreath's apartment door at 1555 Wilder Avenue in Honolulu. They did not have a search warrant.

One or more of the agents pounded on the door to Gilbreath's apartment. Gilbreath was inside the apartment and heard the pounding. He immediately went to get one of his handguns before opening the door. Asleep in the bedroom was his six-year-old son Jesse.

Not knowing who was pounding at his door at that hour of the morning, Gilbreath cautiously opened the door with his gun in his hand. He saw

two or three men standing in the doorway. One of them immediately identified himself and the others as ATF agents, and asked are you "John?" Gilbreath said he was, and put his gun down. Outside the apartment door, Gilbreath could see 7 or 8 more ATF agents, all of whom were dressed in black "SWAT type" clothing, all holding guns their hands.

At least two of the agents standing in front of the apartment door, ATF Agents Jordon Lowe and Gordon Horiye, immediately stepped into the apartment through the open door. Gilbreath did not invite them in, nor did they ask if they could enter.

Gilbreath asked them why they were there. He was told that they were checking on a report that Gilbreath had a machine gun. Gilbreath told the agents that he did not have such a weapon, but that he did have numerous firearms locked in his gun safe, all of which were legal.

The agents informed Gilbreath that they wanted to see his guns. Gilbreath offered to give them the keys to his gun safe. At one point he did ask them if they had a warrant, and they told him they did not, but that "this will only take 30 minutes." Then they told him they wanted to search the apartment.

Concerned that his son was in the apartment and would become frightened by the presence of so many armed men in and outside of the apartment,

2

Gilbreath asked if he could get his son dressed and bring him to stay with a neighbor in the same apartment building before they went any further.

Gilbreath was told that the child would not be allowed to leave the apartment until he signed a consent allowing them to search. He believes it was Agent Lowe who told him this. He told them he would do whatever they wanted, he just wanted to get his son out of the apartment and safely placed at his neighbor's apartment before they did anything. They allowed him to get the child dressed. While he was doing so an ATF agent, with his gun still in his hand, remained in the bedroom with Gilbreath and the child. Gilbreath got the child dressed and out of the apartment as quickly as he could. He signed the consent to search form they placed in front of him. He did not read it.

He gave the agents the keys to his gun safe and pointed to where it stood in the hallway closet. Much to his shock, the agents walked right past the gun safe and walked directly into his bathroom.

While the search was being conducted, Agents Lowe and Horie began to interrogate Gilbreath outside the apartment. He was asked if he had drugs in the apartment. He said he did not and denied drug use. They told him that some marijuana was found. He again said he didn't have any marijuana. They continued to press him about it and asked if it wasn't his, how did it get into his bathroom.

3

He told them "I don't know." In response to this, one of the agents said, "so I guess we're gonna have to take your kid and take you to jail." It was then that Gilbreath said, "Okay, it's mine." After that Gilbreath told the agents whatever he thought they wanted to hear. He signed whatever they wanted him to sign.

About three hours after their arrival, at approximately 8:40 a.m., the armed ATF agents left Gilbreath's apartment. They took all of his weapons and the marijuana. They did not formally arrest him. He was later indicted.

Discovery provided by the government pursuant to Rule 16 does not reveal why so many armed ATF agents went to John Gilbreath's residence, without a warrant. If the AFT in fact had received information regarding Gilbreath, it is not known what the information was, nor who provided it.

## II.  Argument

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches and seizures "are per se unreasonable. . . subject to only a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967); see also Terry v. Ohio, 392 U.S. 1, 20 (1968) (the "police must, whenever practicable,

obtain advance judicial approval of searches and seizures through the warrant requirement"). If the Government fails to prove that a warrantless search or seizure was reasonable -- because it fell within a specifically established and well delineated exception -- then any evidence obtained as a result of the warrantless search or seizure, including a purported confession, may not be used at trial. See, e.g., Kaupp v. Texas, 123 S.Ct. 1843 (2003); Brown v. Illinois, 422 U.S. 590 (1975); Weeks v. United States, 232 U.S. 383 (1914).

Of course, a law enforcement officer need not ignore contraband he or she espies in plain view; but, nonetheless, if the officer arrived at the vantage point from which he or she saw such contraband in plain view by exploiting a prior illegality, the seized evidence is tainted and may not be used at trial. See, e.g., Horton v. California, 496 U.S. 128 (1990). And, generally speaking, an officer's warrantless intrusion near a person's home is permissible, so long as the officer has a legitimate purpose justifying the intrusion and, moreover, so long as the intrusion does not exceed the reasonable scope necessary to achieve the officer's purpose. See, e.g., United States v. Roberts, 747 F.2d 537 (9th Cir. 1984). As the Roberts Court remarked, "anyone may 'openly and peaceably, at high noon ... walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof -- whether the

questioner be a pollster, a salesman, or an officer of the law.'" Roberts, 747 F.2d at 542-543 (quoting Davis v. United States, 327 F.2d 301, 303 (9th Cir. 1964)). Such is the case for the simple reason that the intrusion of merely knocking upon a front door of someone's residence is minimal and it is reasonably calibrated to its purpose, which is nothing more than an honest intent of asking questions, which the occupant of the residence retains the right to refuse to answer.

One does not come "openly and peaceably" to your door dressed in full combat gear, ala "SWAT" team mufti, with weapons drawn, in numbers in excess of half dozen. Pollsters have never been known to canvas using such tactics. Over a half-dozen armed ATF agents, donned in full SWAT regalia signify an intrusion that is much greater than that need to simply ask a few questions. And in Gilbreath's view, the intrusion of armed ATF agents pounding on his front door at six a.m. was unreasonable under the Fourth Amendment; simply said, the level of intrusion was not tailored -- except in only an outrageous degree -- to the officer's alleged purpose for being there.

Consent to a search or seizure is a recognized exception to the Fourth Amendment's warrant requirement. Yet, "'a mere submission to a claim of lawful authority,'" negates consent even if it is apparently given. Kaupp, 123 S.Ct. at 1847 (quoting Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion).

Indeed, as the Kaupp Court reminded us, "the police may not seek to verify mere suspicions by means that approach the conditions of arrest." Kaupp, 123 S.Ct. at 1846 (quoting Royer, 460 U.S. at 499 (brackets and original quotation marks omitted)). Moreover, consent, even if intelligently and knowingly given, is negated if the officers obtaining that consent fail to forthrightly state their true purpose. See, e.g., United States v. Phillips, 497 F.2d 1131, 1135 n.4 (9th Cir. 1974). And, in the Ninth Circuit, it is axiomatic that the Fourth Amendment "clearly prohibits deliberate misrepresentation of the purpose of a government investigation." United States v. Bosse, 898 F.2d 113, 116 (9th Cir. 1990); see also United States v. Little, 753 F.2d 1420, 1438 (9th Cir. 1984). In other words, a pretextual intrusion, brought about by ruse or otherwise, is unreasonable under the Fourth Amendment. See Bosse, 898 F.2d at 115.

The tactics used by the ATF in this case to check out a report of an illegal weapon are of the type usually reserved for paramilitary operations. Such tactics are deliberately intimidating and coercive. The use of such tactics by law enforcement in approaching the front door of an individual's personal residence is clearly "unreasonable" as that term is used in the Fourth Amendment to the Constitution of the United States. Any consent to search in the face of such clearly intimidating and coercive circumstances cannot be viewed as voluntary.

The officers intruding upon Gilbreath's home and, too, upon his privacy and liberty, asserted that they had a report that Gilbreath may have had a machine gun. The officers maintained that they were there only to question Gilbreath about this report. The number, attire, and pose (throughout the encounter) of the officers belie their stated purpose. They were armed. Indeed, at least one officer's weapon was drawn at some point during the encounter. The officers, once Gilbreath's "consent" to a search was obtained by threatening Gilbreath with arrest and with the removal of his son from his care, did not investigate Gilbreath's gun cabinet -- the keys to which he had given to an officer -- but immediately entered a bathroom, opened the medicine cabinet (an area it is patently unreasonable to believe a machine gun could be hidden) and, purportedly, discovered the minimal amount of marijuana predicating this prosecution. Such actions on the part of the officers, especially when coupled with their number, their attire and armament, and their posture throughout the encounter, reflect that their stated purpose was nothing more than a pretext and ruse.

It is also elemental that, as the Kaupp court seeks to remind us, that "'an initially consensual encounter ... can be transformed into a seizure or detention within the meaning of the Fourth Amendment.'" Kaupp, 123 S.Ct. at 1847 (quoting INS v. Delgado, 466 U.S. 210, 215 (1984)). Thus, even if Gilbreath

"consented" to the officers entering his home -- a point he vigorously contests -- the officers' conduct thereafter may have become unreasonable after such consent. If so, suppression of any physical evidence, as well as any tainted statements that Gilbreath may allegedly have given, is warranted. See, e.g., Kaupp, 123 S.Ct. at 1847; Wong Sun v. United States, 371 U.S. 471 (1963).

Gilbreath asserts that, at a minimum, it was unreasonable for such a large number of fully armed officers to arrive at his home at six a.m. and knock on his door simply to investigate an alleged report that he had a machine gun. Moreover, pending the requisite discovery, it may well be that the alleged "tip" either did not exist, or that the officers' informant was unreliable. It was unreasonable for officers to cross the threshold of Gilbreath's door without asking his consent to do so. Moreover, even if he did consent, such consent would only have been a submission to the officers' show of authority and, therefore, invalid under the Fourth Amendment. The evidence adduced at a hearing may well reflect other points during the encounter that rendered it unlawful, thereby tainting Gilbreath's alleged confession and the seizure of any evidence.

## III. Conclusion

In sum, Gilbreath asserts that any statements he may have given to the officers and any evidence they may have seized are tainted and must be suppressed under the Fourth, Fifth, and Sixth Amendments. Because the factual basis necessary for a full constitutional analysis of the encounter has yet to be disclosed by the Government, Gilbreath respectfully requests that, after a hearing has been conducted on this motion, the parties be permitted to submit supplemental memoranda of law.

DATED:  Honolulu, Hawaii, August 25, 2003.

_____
DONNA M. GRAY
Attorney for Defendant
JOHN GILBREATH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Cr. No. 03-00106 DAE |
| ) | |
| Plaintiff, ) | DECLARATION OF COUNSEL |
| ) | |
| vs. ) | |
| ) | |
| JOHN GILBREATH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF COUNSEL**

I, DONNA M. GRAY, hereby declare as follows:

1. That I am counsel for defendant, John Gilbreath, having been appointed pursuant to the Criminal Justice Act.

2. That the facts and statements set forth in the foregoing document are true and correct to the best of my knowledge and belief.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATED: Honolulu, Hawaii, August 25, 2003.

_____
DONNA M. GRAY
Attorney for Defendant
JOHN GILBREATH

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was duly mailed and/or hand-delivered to the following on August 25, 2003:

THOMAS C. MUEHLECK
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Boulevard, Room 6100
Honolulu, Hawaii  96813

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED:  Honolulu, Hawaii, August 25, 2003.

_____
Hermi Hunt