IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00106 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN ANDREW GILBREATH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

The court heard Defendant's Motion on September 18, 2003. Assistant United States Attorney Thomas Muehleck appeared at the hearing on behalf of Plaintiff; Assistant Federal Public Defender Donna M. Gray appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court DENIES Defendant's Motion to Suppress Evidence.

### BACKGROUND

On the morning of December 19, 2002, Agents Gordon Horiye ("Agent Horiye") and Jordon Lowe ("Agent Lowe") from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") arrived at Defendant John Gilbreath's apartment, located at 1555 Wilder Avenue in Honolulu, Hawai`i. Both agents were dressed

in civilian clothing with their weapons holstered and were accompanied by a uniformed officer of the Honolulu Police Department ("HPD"). The agents knocked on the door of Defendant's apartment.

Defendant approached the door holding a handgun. When Defendant opened the door, the agents identified themselves and asked if they could speak with him. At this point, Defendant retreated back into his apartment and placed his gun on the dresser. Defendant invited the agents into his apartment and the two agents went inside. Defendant states that he could see seven or eight other ATF agents dressed in raid gear standing outside of his apartment.

Upon entering Defendant's apartment, the agents informed Defendant that they had heard he possessed a machine gun and that as of September 11, 2001, federal agents routinely investigated instances of firearm possession by civilians. The agents then asked for permission to search Defendant's apartment. Defendant told the agents that he did not have a machine gun, but that he did possess a replica. Defendant walked out of the agents' sight to retrieve the replica. Agent Lowe moved to watch where Defendant was going, lifted his shirt, and put his hand on his weapon. Defendant returned with a replica machine gun.

Defendant gave the replica machine gun to the agents and stated that he possessed additional firearms, all of which were locked in his gun safe. Defendant

agreed orally to allow the agents to look inside his residence at his guns. Defendant offered to give the agents the keys to the gun safe. When Defendant questioned the agents as to whether or not they had a warrant, the agents replied that they did not have one.

One agent subsequently walked outside and signaled to the other agents to enter the house. The other agents then entered the apartment and did a protective sweep to ascertain if there were any other people present in the house, and if there were any visible threats to their safety. The Defendant and his six-year-old child were the only people in the apartment. Agent Horiye asked Defendant if there was somewhere the child could go during the course of the search. Defendant told agents that the child could go to the apartment of a neighbor. Under the supervision of an armed ATF agent, the child got dressed and left the apartment.

The Government then explained the consent to search form to Defendant. The Government testified convincingly that Defendant was allowed to read the form and that the form was read to him. The two agents stated that Defendant subsequently signed the consent form. See Government's Exhibit 1. The court found Defendant's testimony that Agent Lowe refused to allow

Defendant's son to leave the apartment until he signed the consent form unconvincing.

      While other agents searched the house, Agents Horiye and Lowe spoke with Defendant outside of the apartment. Agent Lowe testified that he informed Defendant that he was not under arrest and was free to leave. Defendant smoked a cigarette and remained outside with the two agents. The agents spoke with Defendant intermittently during the course of the two hour search. Neither of the agents read Defendant his <u>Miranda</u> rights.

      As the search was being conducted, Defendant denied using drugs and claimed that he did not have any drugs in his apartment. The agents conducting the search subsequently discovered a container of marijuana under towels in the bathroom. Defendant initially denied ownership or any knowledge of the marijuana. The Government asserts that the agents told Defendant that if the marijuana was not his, then they would not find his fingerprints on the container. The Defendant then admitted that it was his marijuana. The ATF agents then left Gilbreath's apartment taking with them the marijuana and eight firearms found in Defendant's apartment.

On August 27, 2003, Defendant filed his Motion to Suppress Evidence and Statements ("Motion"). The Government filed its opposition to Defendant's Motion to Suppress ("Opposition") on September 11, 2003.

## DISCUSSION

Defendant moves the court to suppress all evidence obtained as a result of the initial warrantless search of Defendant's residence, as well as all statements made by Defendant to law enforcement officers subsequent to the search. Defendant states that his Motion to Suppress supports violations of the Fourth, Fifth, and Sixth Amendments. Defendant, however, only provides case law to support a claim pursuant to the Fourth and Fifth Amendments.

**A.    Search of Defendant's Residence**

Defendant contends that the search of his home was illegal in violation of the Fourth Amendment. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A search without a warrant is "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One such

exception to the search warrant requirement is the consent exception. A search conducted pursuant to a valid consent is constitutionally permissible. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Where consent is relied upon to justify the legality of a search, the Government has the burden of establishing that consent was given, and that it was voluntary and not the result of duress or coercion. Id. at 248. Voluntariness is a question of fact to be determined from all the circumstances. Id. at 248-249. The Government need not establish that the subject had knowledge of a right to refuse to allow the search, however, it is one factor in determining the voluntariness of the consent. Id. at 249.

Defendant first argues that the manner in which the agents approached his residence violated his reasonable expectation of privacy. Defendant states that when the agents approached his home in "full combat gear," the intrusion was "unreasonable under the Fourth Amendment." Motion, at 6. The issue of whether or not Defendant's reasonable expectation of privacy was infringed upon by way of the agents' approach to Defendant's home is not, however, the salient issue in the case. Agents invariably intrude on one's reasonable expectation of privacy when they conduct a thorough search of one's residence. Therefore, the court will focus instead on whether the search of Defendant's home, although an infringement of Defendant's reasonable

6

expectation of privacy, falls into the consent exception of the warrant requirement, and is thereby lawful.

As discussed above, the Government has the burden of establishing that a consent to search was given by Defendant, and that the consent was voluntary. Agents Horiye and Lowe testified that they informed Defendant that they had heard he possessed a machine gun, and that they asked permission to search the apartment. Both parties agree that Defendant gave the agents oral consent to enter his apartment to look at his guns.

After doing a preliminary search, Agent Horiye gave Defendant a copy of the written consent form to search the entire residence. Agent Horiye testified convincingly that he read the form to Defendant. Defendant subsequently signed the consent form. The ATF agents then conducted a search of the premises and found the marijuana and firearms that they later confiscated. The above facts suggest that the Government has proven sufficiently that Defendant voluntarily gave the agents consent to search the apartment.

Defendant maintains that even if he gave consent to the agents to search his home, the consent was negated due to the way in which the search was conducted. Defendant cites U.S. v. Kaupp as standing for the proposition that a

"mere submission to a claim of lawful authority" negates consent even if consent was given at the time of the search. Kaupp v. Texas, 123 S. Ct. 1843, 1847 (2003).

Defendant's claim that his consent was a result of mere submission to a showing of lawful authority, however, is unavailing because there is no evidence that agents misused their authority through a showing of unwarranted force or coercion. There is no evidence that the agents posed an intimidating threat to Defendant to secure his consent. The agents approached Defendant's house wearing plain clothes. While there were several armed ATF agents present, their presence was warranted given that they went to Defendant's residence to investigate whether Defendant possessed an automatic weapon. Defendant testified that during the course of the search, the agents neither touched him nor pointed a gun at him. Further, the agents did not act under the color of law by pretending to be acting in accordance with a warrant. When Defendant asked the agents if they had a warrant, the agents replied that they did not.

Defendant also argues that "police may not seek to verify mere suspicions by means that approach the conditions of arrest." Id. at 1846 (quoting Florida v. Royer, 460 U.S. 491, 499 (1983)) (internal citations omitted). The Government agents testified convincingly that they informed Defendant that he

8

was not under arrest and that he was free to leave at any time. Neither party has suggested that Defendant was handcuffed or otherwise restrained. Therefore, it does not appear that the conditions under which the search took place were such that they approached the "conditions of an arrest."

Finally, Defendant states that even if one's consent is voluntarily given, it is subsequently vitiated if the officers obtaining consent fail to state the true purpose of their search. See, e.g., U.S. v. Little, 753 F.2d 1420, 1438 (9th Cir. 1984). The Government and Defendant have both stated that the agents told Defendant that they had heard Defendant possessed a machine gun. While Defendant asserts that the agents did not investigate his gun cabinet, both Defendant and Government stated that the agents found eight firearms as well as the marijuana. Defendant stated that the agents took all of his weapons. Thus, even though the Government is ultimately prosecuting Defendant on charges of drug possession, no evidence has been presented to suggest the stated purpose of searching for a machine gun was false, especially in light of the fact that the Government purportedly confiscated all of Defendant's weapons.

B.  **Statements Made By Defendant During the Search**

The court notes that Defendant did not include arguments premised on the 5th Amendment in its papers. However, at the hearing, Defendant argued that statements made at the scene of the search should be suppressed because the agents failed to provide Defendant with Miranda warnings prior to questioning.

A person is entitled to receive Miranda warnings when subject to 'custodial interrogation.' Miranda v. Arizona, 384 U.S. 436, 444 (1966). One is "in custody" for purposes of Miranda when one is "taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The relevant inquiry is how a "reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984).

Agent Horiye and Agent Lowe spoke with Defendant intermittently over the course of the search of Defendant's residence. Agent Lowe and Agent Horiye testified that Agent Lowe informed Defendant that he was not under arrest and that he was free to leave at any time. Defendant was not handcuffed nor physically restrained. Defendant testified that the agents neither pointed a gun at him nor threatened him during the course of the search. While Defendant was outside speaking with the agents, he was permitted to smoke and stood up from his

chair on several occasions. Based on the foregoing facts, it appears that the "inherently compelling pressures" of a custodial setting were simply absent during the search of Gilbreath's residence. <u>Miranda</u>, 384 U.S. at 467. Therefore, the statements made by Defendant to the agents during the course of the search will not be suppressed as a consequence of the agents' failure to provide him with Miranda warnings.

## CONCLUSION

For the reasons stated above, the court DENIES Defendant's Motion to Suppress.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, Oct. 3, 2003.

_____
DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

<u>United States v. John Gilbreath</u>, CR No. 03-00106; ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

F I L E   C O P Y

\* \* LABEL LIST \* \*

Case Number:1:03-cr-00106

Thomas Muehleck, Esq.
Office of the United States Attorney
Prince Kuhio Federal Building
300 Ala Moana Blvd Ste 6100
Honolulu, HI  96850

Donna Gray, Esq.
Office of the Federal Public Defenders
PJKK Federal Building
300 Ala Moana Blvd Rm 7-104
Honolulu, HI  96813