*As PAE*

ORIGINAL

PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii

DONNA M. GRAY  #2332
Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii  96850-5269
Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:     fpdhi@hotmail.com

Attorney for Defendant
JOHN ANDREW GILBREATH

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 5 2004

at ___ o'clock and ___ min. ___ M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 03-00106 DAE |
| | ) |
| Plaintiff, | ) DEFENDANT'S OBJECTIONS TO |
| | ) GOVERNMENT'S PROPOSED |
| vs. | ) SUPPLEMENTAL JURY |
| | ) INSTRUCTIONS; DEFENDANT'S |
| JOHN ANDREW GILBREATH, | ) SUPPLEMENTAL PROPOSED JURY |
| | ) INSTRUCTIONS NOS. 1A & 1B; |
| Defendant. | ) CERTIFICATE OF SERVICE |
| | ) |

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S PROPOSED
SUPPLEMENTAL JURY INSTRUCTIONS AND DEFENDANT'S
SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS NOS. 1A &1B**

Defendant John Andrew Gilbreath, though counsel, respectfully

submits the following objections to the government's supplemental proposed jury

instructions.  In addition, Gilbreath submits supplemental proposed jury

instructions regarding the elements of the charged offense and defining key terms.

DATED: Honolulu, Hawaii, January 15, 2004.

DONNA M. GRAY
Attorney for Defendant
JOHN ANDREW GILBREATH

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 03-00106 DAE |
| | ) |
| Plaintiff, | ) DEFENDANT'S OBJECTIONS TO |
| | ) GOVERNMENT'S PROPOSED |
| vs. | ) SUPPLEMENTAL JURY |
| | ) INSTRUCTIONS |
| JOHN ANDREW GILBREATH, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT'S OBJECTIONS TO**
**GOVERNMENT'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS**

## I.    First Objection

The government's supplemental proposed jury instruction No. 1 uses the phrase "at least one firearm" in defining the first element of the offense. The government expects to introduce evidence regarding several firearms that it claims Gilbreath possessed on December 19, 2002. The phrase "*at least* one firearm" connotes that the jury need not be unanimous concerning how many and, more importantly, which specific firearm or firearms support this element of the offense. Gilbreath's view is that the jury must be unanimous as to the specific firearm or firearms that it finds he possessed while being an unlawful user of a controlled substance. The phrase "at least one" firearm should be stricken and, at the very least, replaced with "a firearm." In addition, it appears that the parties agree that a

specific unanimity instruction should be given to avoid any potential confusion amongst the jurors and to curb the possibility that the jury will not be unanimous with respect to what specific conduct Gilbreath committed.

## II.     Second Objection

The government's proposed instructions do not include the alternate element of being an addict, rather than an unlawful user, in possession of a firearm and do not set forth the statutory definition of "addict." In doing so, Gilbreath submits that the government has elected -- akin to the limitations a bill of particulars would have imposed upon the government -- not to proceed on the theory that Gilbreath was an "addict." Accordingly, language in the indictment accusing Gilbreath of being an "addict" must be stricken from the indictment before it is read and submitted to the jury.

## III.     Third Objection

The government's supplemental proposed jury instructions No. 1 and No. 2 use the phrase "user of a controlled substance" rather than the statutory phrase "*unlawful* user of ... a controlled substance." See 18 U.S.C. § 922(g)(3) (prohibiting a person who is "an *unlawful* user of or addicted to any controlled substance" from possessing a firearm (emphasis added)). Dropping the word

2

"unlawful" removes a critical component of the charged crime.  Indeed, as the statutory definition for "addict" reflects, simply being a "user" -- as opposed to, say, being an "habitual user" as set forth in the definition of "addict" -- in possession of a firearm is not what the statute defining the charged offense proscribes.  See 18 U.S.C. § 802 (defining addict as meaning "any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of sell-control with reference to his addiction").  As such, the government's omission of the word "unlawful" in the phrase "unlawful user of a controlled substance" does not adequately define the charged offense.

In connection with its definition of "user of a controlled substance," the government cites United States v. Purdy, 264 F.3d 809 (9th Cir. 2001), as support for its proposed instruction No. 2.  It should be noted that Purdy was not a jury instruction case; rather, the issue resolved by the Purdy Court was whether the phrase "unlawful user" rendered the statute unconstitutionally vague.  And in this regard, both Purdy and the case it relied upon, United States v. Ocegueda, 564 F.2d 1363 (9th Cir. 1977), involved extensive use of a controlled substance by the defendant -- indeed, in Ocegueda, the government established that the defendant had a six-year history of abusing heroin; and in Purdy, the court noted that the

3

defendant had used cocaine, methamphetamine, and marijuana "for years." Purdy, 264 F.3d at 812; see also Ocegueda, 564 F.2d at 1364-1365. As such, the question of whether the statute gave the defendants in those cases sufficient notice that their extensive use of such illicit substances constituted "unlawful use" was relatively straight forward. But in any event, Purdy actually supports a more stringent definition of "unlawful user" than that submitted by the government.

For one thing, the Purdy Court implied that there is a difference between an "unlawful user" and a mere "user." In stating the issue presented, the Purdy Court remarked: "[t]he only question is whether § 922(g)(3) provided Purdy with sufficient notice that *the manner and extent to which* he smoked marijuana and methamphetamine qualified him as an 'unlawful user of … a controlled substance.'" Purdy, 264 F.3d at 812. In so couching the question presented, the Purdy Court suggested that marijuana, for example, could be used in a manner and extent that would *not* fall within the ambit of being an "unlawful user." Any definition of "unlawful user" must, therefore, take into account that a mere "user" is not culpable under the statute.

More importantly, the Purdy Court also indicated why Congress used the word "unlawful" to modify "user." Parsing relevant "statutory history," the Purdy Court reiterated that § 922(g) was "enacted 'to keep firearms out of the

4

hands of those not legally entitled to possess them *because of* … [their] *criminal background*.'" Purdy, 264 F.3d 809 (quoting Ocegueda, 564 F.2d at 1365-1366) (brackets and ellipsis in Purdy; emphases added).  Emphasizing this point, the Purdy Court further reiterated the Ocegueda Court's view that "§ 922 explicitly included unlawful drug users as individuals *having a 'criminal background.'"* Purdy, 264 F.3d at 812 (quoting Ocegueda, 564 F.2d at 1366).  It is this element of criminality, which possibly suggests that the government must establish that the defendant has a criminal history of prior convictions involving illicit drug use, that separates and gives distinct meaning to the phrase "unlawful user" as opposed to "addict."  The latter is statutorily defined (while the former is not) as meaning "any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the poser of self-control with reference to his addiction." 18 U.S.C. § 802.  So defined, criminality -- in any degree -- is *not* a component of being an "addict."  By using the word "unlawful" to modify "user," however, Congress clearly indicated that a component of being an "unlawful user" is a history of criminality by a particular defendant with respect to illicit substances.

Gilbreath, accordingly, submits that the cases defining "unlawful user" as, in essence, simply a "habitual user" -- such as the phrase is defined in the

5

government's supplemental proposed jury instruction No. 2 -- do not correctly

capture the congressional intent in distinguishing an "*unlawful* user" from an

"addict." The government's supplemental proposed jury instruction No. 2

illustrates this point. Under the government's definition, every addict would be an

unlawful user. What person who "habitually uses any narcotic drug" is not also

taking drugs with "regularity ... over an extended period of time"? The

government's definition of "unlawful user" renders "addict," as used in § 922(g),

superfluous, for it has no independent meaning. Such an interpretation simply

cannot be countenanced under standard canons of statutory construction, including

the rule of lenity, which counsels against adopting a broad reading of a penal

statute over a narrower, and equally reasonable, one.

Asserting that using any particular drug is prohibited under some

state of federal statute sufficiently evinces that *any* use, or even any extensive use,

of any controlled substance is sufficient to render that use "unlawful" is not an

answer to the points raised above. Such an observation applies with equal force to

"addict" as it does to "unlawful user." In the statute, the phrase "any controlled

substance" modifies *both* "addict" and "unlawful user." See 18 U.S.C. § 922(g)(3)

("an unlawful user *of* or addicted *to* any controlled substance"). Because "any

controlled substance" modifies both "addicted" and "unlawful user," an addict of a

6

non-controlled substance cannot be prosecuted under the statute; hence, being addicted to a legal drug, or a lawfully prescribed drug, is not within the ambit of the statute's criminal prohibition. Moreover, if all "unlawful" meant to convey was that the user be a person who used a controlled substance, Congress would not have modified "user" with "unlawful," for "unlawful" would simply repeat what "of … any controlled substance" already conveys. In sum, that use or extensive use of a particular drug may be illegal does not provide a meaningful basis upon which to provide "addict" and "unlawful user" with mutually independent meaning such that one does not swallow the other.

Gilbreath believes that "unlawful user" must be defined so as to capture this salient difference between an unlawful user and an addict; that is, in such a manner as to require a criminal background, such as a history of prior drug-related convictions. Given the statute's plain language, grammatical structure, and legislative history, "unlawful" can only mean that the user must have a history of prior drug-related convictions. Accordingly, and in light of the foregoing and the issues raised by the government supplemental proposed jury instructions, Gilbreath submits the following supplemental jury instructions regarding the elements of the offense and the definition of an "unlawful user."

## IV.  **Fourth Objection**

The government's supplemental jury instruction No. 3, filed on January 15, 2004, is also objectionable.  The cases cited by the government in support of that instruction do *not* stand for the proposition that the jury must be instructed as to what the government's burden does not encompass.  Rather, those cases arose because the defendant asserted that the jury must be instructed that the defendant have knowledge of the interstate commerce nexus element and that his possession was unlawful.  Holding that such instructions are not warranted is not a holding that such instructions must, or even should, be given.

Gilbreath submits that his supplemental proposed jury instruction No. 1a adequately conveys that the government need not prove that he knew the firearm had moved through interstate commerce and that it was unlawful for him to possess the firearm.  This is so because the first element of the offense -- that the defendant knowingly possessed a firearm -- is the only element to contain a knowledge requirement.  Hence, at a minimum, the final two paragraphs of the government's supplemental jury instruction No. 3 should be stricken.  In addition, Gilbreath submits that "the Defendant," as used in both sentences of the first paragraph, be changed to the more neutral  "a person."

8

The defendant's proposed jury instructions attached hereto as 1a and 1b are based on <u>United States v. Herrera</u>, 2898 F.3d 311 (5th Cir. 2002); <u>United States v. Purdy</u>, 264 F.3d 809 (9th Cir. 2001); and <u>United States v. Ocegueda</u>, 564 F.2d 1363 (9th Cir. 1977).

DATED:   Honolulu, Hawaii, January 15, 2004.

DONNA M. GRAY
Attorney for Defendant
JOHN ANDREW GILBREATH

9

## Defendant's Supplemental Proposed Jury Instruction No. 1a

The government accuses the defendant, John Gilbreath, of knowingly possessing, in an affecting commerce, a firearm, while being an unlawful user of a controlled substance. This offense has three elements, each of which you must all agree the government has proven beyond a reasonable doubt in order to convict the defendant. Those three elements are:

(1)     the defendant knowingly possessed a firearm;

(2)     that firearm had been shipped or transported to Hawaii from another state of the United States, or from a foreign country; and

(3)     at the time he possessed that firearm, the defendant was an unlawful user of a controlled substance.

If you do not unanimously agree that the government has proven each of the foregoing elements beyond a reasonable doubt, then you must find the defendant not guilty. And, because the government has accused the defendant of possessing more than one firearm, you must all agree on which specific firearm, or firearms, the defendant possessed in order to find the defendant guilty as charged, otherwise you must acquit him.

**<u>Defendant's Supplemental Proposed Jury Instruction No. 1b</u>**

Marijuana is a controlled substance.

To be an "unlawful user of a controlled substance," a person must use a controlled substance with such regularity and over such an extensive period of time that his use has resulted in that person having a criminal background.  In other words, an "unlawful user of a controlled substance" is a person who has a history of prior convictions related to a controlled substance that the person regularly and extensively used.

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document

was duly mailed and/or hand-delivered to the following on January 15, 2004:


THOMAS C. MUEHLECK
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Boulevard, Room 6100
Honolulu, Hawaii   96813

Attorney for Plaintiff
UNITED STATES OF AMERICA


DATED:   Honolulu, Hawaii, January 15, 2004.


_____
Hermi Hunt