*ccq*

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 1 4 2005

at ___ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00106 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN ANDREW GILBREATH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING DEFENDANT'S
MOTION FOR RELEASE ON BOND PENDING APPEAL

The Court heard Defendant's Motion on March 11, 2005. Assistant

United States Attorney Thomas Muehleck appeared at the hearing on behalf of the

United States; Assistant Federal Defender Donna Gray appeared at the hearing on

behalf of Defendant. After reviewing the motion and the supporting and opposing

memoranda, the Court DENIES Defendant's Motion for Release on Bond Pending

Appeal.

BACKGROUND

On the morning of December 19, 2002, Agents Gordon Horiye

("Agent Horiye") and Jordon Lowe ("Agent Lowe") from the Bureau of Alcohol,

71

Tobacco, and Firearms ("ATF") arrived at Defendant John Gilbreath's apartment, located at 1555 Wilder Avenue in Honolulu, Hawaii. Both agents were dressed in civilian clothing with their weapons holstered and were accompanied by a uniformed officer of the Honolulu Police Department ("HPD"). The agents knocked on the door of Defendant's apartment.

Defendant approached the door holding a handgun. When Defendant opened the door, the agents identified themselves and asked if they could speak with him. At this point, Defendant retreated back into his apartment and placed his gun on the dresser. Defendant invited the agents into his apartment and the two agents went inside. Defendant states that he could see seven or eight other ATF agents dressed in raid gear standing outside of his apartment.

Upon entering Defendant's apartment, the agents informed Defendant that they had heard he possessed a machine gun and that as of September 11, 2001, federal agents routinely investigated instances of firearm possession by civilians. The agents then asked for permission to search Defendant's apartment. Defendant told the agents that he did not have a machine gun, but that he did possess a replica. Defendant walked out of the agents' sight to retrieve the replica. Agent Lowe moved to watch where Defendant was going, lifted his shirt, and put his hand on his weapon. Defendant returned with a replica machine gun.

2

Defendant gave the replica machine gun to the agents and stated that he possessed additional firearms, all of which were locked in his gun safe. Defendant agreed orally to allow the agents to look inside his residence at his guns. Defendant offered to give the agents the keys to the gun safe. When Defendant questioned the agents as to whether or not they had a warrant, the agents replied that they did not have one.

One agent subsequently walked outside and signaled to the other agents to enter the house. The other agents then entered the apartment and did a protective sweep to ascertain if there were any other people present in the house, and if there were any visible threats to their safety. The Defendant and his six-year-old child were the only people in the apartment. Agent Horiye asked Defendant if there was somewhere the child could go during the course of the search. Defendant told agents that the child could go to the apartment of a neighbor. Under the supervision of an armed ATF agent, the child got dressed and left the apartment.

The Government then explained the consent to search form to Defendant. The Government testified convincingly that Defendant was allowed to read the form and that the form was read to him. The two agents stated that Defendant subsequently signed the consent form. See Government's Exhibit 1.

3

The court found Defendant's testimony that Agent Lowe refused to allow Defendant's son to leave the apartment until he signed the consent form unconvincing.

While other agents searched the house, Agents Horiye and Lowe spoke with Defendant outside of the apartment. Agent Lowe testified that he informed Defendant that he was not under arrest and was free to leave. Defendant smoked a cigarette and remained outside with the two agents. The agents spoke with Defendant intermittently during the course of the two hour search. Neither of the agents read Defendant his <u>Miranda</u> rights.

As the search was being conducted, Defendant denied using drugs and claimed that he did not have any drugs in his apartment. The agents conducting the search subsequently discovered a container of marijuana under towels in the bathroom. Defendant initially denied ownership or any knowledge of the marijuana. The Government asserts that the agents told Defendant that if the marijuana was not his, then they would not find his fingerprints on the container. The Defendant then admitted that it was his marijuana. The ATF agents then left Gilbreath's apartment taking with them the marijuana and eight firearms found in Defendant's apartment.

4

On March 5, 2003, Defendant was charged in a federal indictment with one count of being a drug user in possession of firearms. On August 27, 2003, Defendant filed his Motion to Suppress Evidence and Statements. The Government filed its opposition to Defendant's Motion to Suppress on September 11, 2003. On October 3, 2003, the Court denied Defendant's Motion to Suppress.

On January 23, 2004, a jury found Defendant guilty of the charges. On February 4, 2005, Defendant was sentenced to 24 months imprisonment and 3 years of supervised release. The Court stayed mittimus until March 31, 2005, and allowed Defendant to self-surrender on the mittimus date. Defendant is appealing his conviction on grounds that the search and confession violated the Fourth and Fifth Amendments.

## DISCUSSION

Under 18 U.S.C. § 3143(b), the Court must order that a person who has been found guilty of an offense and sentenced to a term of imprisonment be detained even while an appeal is pending, unless the Court finds:

> (A)   by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B)   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

5

  (i)    reversal,
  (ii)   an order for a new trial,
  (iii)  a sentence that does not include a term of imprisonment, or
  (iv)   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b).

The Ninth Circuit has clarified that, under this statute, the defendant has the burden of showing the following four elements:

  1.    That the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;
  2.    That the appeal is not for the purpose of delay;
  3.    That the appeal raises a substantial question of law or fact; and
  4.    That if that substantial question is determined favorably to the defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Handy, 761 F.2d 1279, 1283 (9th Cir. 1985). The court held that "substantial" defines the level of merit required in the question raised on appeal, while the phrase "likely to result in reversal" defines the type of question that must be presented. Id. at 1281. To illustrate the level of merit that qualifies as "substantial" under the statute, the court explained: "The question may be new and novel. It may present unique facts not plainly covered by the controlling

6

precedents. It may involve important questions concerning the scope and meaning of decisions of the Supreme Court." Id.

The Court accepts Defendant's argument that his appeal is not purely for purposes of delay. Whether he is likely not to pose a danger to the community is less clear. As the government notes, Defendant did not maintain a spotless record while he was free on pretrial release. Indeed, on June 28, 2003, Defendant was arrested for reckless endangerment, reckless driving, speeding, and attempting to elude. These charges stemmed from an incident in which Defendant is alleged to have driven his motorcycle in a dangerous manner at speeds over 90 mph in a 55 mph zone, and then failed to respond immediately when police officers attempted to stop him. He pled guilty to reckless endangerment and paid a fine of $166. This was a violation of the condition of release that prohibited him from committing any additional violations of federal, state, or local law while on release. Moreover, as the government asserts, the instant offense involved weapons and an illegal drug; Defendant also has prior arrests for promoting a detrimental drug and for criminal contempt of court.

Regardless, the Court simply cannot find that a substantial question of law or fact is presented by Defendant's appeal. The questions raised by Defendant's appeal are not new and novel. Defendant's case does not present

unique facts not plainly covered by the controlling precedents. The appeal does

not raise important questions concerning the scope and meaning of decisions of

the Supreme Court. Nor does the application of these well-settled principles to the

facts of this case raise issues that this Court finds to be fairly debatable. Thus, the

Court finds that Defendant has not met his burden of proving that a substantial

question of law or fact is presented by his appeal.

  Moreover, the Defendant discredited himself in the eyes of the Court

by presenting testimony in earlier proceedings that the Court found to be plainly

false. In his motion to suppress, Defendant argued that he did not consent to the

search of his apartment. At the hearing, Defendant testified that he did not tell the

agents they could come inside his apartment and did not consent to the search of

the apartment. ATF agents Lowe and Horiye testified that Defendant consented

after being told he was not under arrest and was free to leave, and that he signed

the consent form after both listening to the agent read the form to him and having

the opportunity to read it himself. As the Court made clear in its order denying

Defendant's motion to suppress, the Court found Defendant's testimony to lack

credibility, and the agents' testimony to be highly credible. The fact that the Court

has previously found Defendant's sworn testimony to be false impacts its decision

in the instant matter in two ways. First, the Court has qualms about trusting

Defendant's assurances that he will not pose a flight risk or any other danger to the community, given that the Court has found him to be untruthful in some previous instances.  Second, as the Court finds that much of Defendant's argument on the motion to suppress was premised on factual allegations that are not even arguably true, this detracts from any argument that a substantial question of law or fact is presented by Defendant's appeal.  As the Court told Defendant at his sentencing, the Court would look more favorably on such requests as the one presented in this motion if Defendant had been truthful in the earlier proceedings.

CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Release on Bond Pending Appeal.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, _____MAR 1 4 2005_____.

DAVID ALAN EZRA
CHIEF UNITED STATES DISTRICT JUDGE

United States of America vs. John Andrew Gilbreath, CR. NO. 03-00106 DAE;
ORDER DENYING DEFENDANT'S MOTION FOR RELEASE ON BOND
PENDING APPEAL

9

F I L E   C O P Y

* * LABEL LIST * *

Case Number:1:03-cr-00106

Thomas Muehleck, Esq.
Office of the United States Attorney
Prince Kuhio Federal Building
300 Ala Moana Blvd Ste 6100
Honolulu, HI  96850

Donna Gray, Esq.
Office of the Federal Public Defenders
PJKK Federal Building
300 Ala Moana Blvd Rm 7-104
Honolulu, HI  96813

CC:  USA
     USM
     PTS
     USPO